## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SARENA SALMERI                                          :
    Plaintiff                                     :
                                                    :
vs.                                                     :
                                                    :
BANK OF AMERICA, NATIONAL ASSOCIATION                   :
    Defendant                                     :          FEBRUARY 7, 2019

## COMPLAINT

## I.  INTRODUCTION

1. Employers have a duty under the Americans with Disabilities Act to provide reasonable accommodations to disabled employees, so long as the requested accommodation does not cause an undue hardship for the employer.  This duty requires employers to reassign a disabled employee to a vacant position when the disabled employee is qualified for the position. It is not enough to let that employee compete against other workers for the position.  *U.S. Equal Opp. Comm'n.*, Notice No. 915.002, para. 29 (Oct. 17, 2002), *available at* https://www.eeoc.gov/policy/docs/accommodation.html#reassignment.[1]

2. When an employer refuses to transfer a disabled employee to a vacant position for which she is qualified, the employer is liable for any and all harm that results.

3. Here, Defendant Bank of America refused to transfer Plaintiff, a woman who suffers from Central Auditory Processing Disorder, from a hectic inbound call center position to either of two vacant and less busy outbound caller positions.  Instead, Defendant forced

---

[1] Citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1304-05, 8 AD Cas. (BNA) 1093, 1110-11 (D.C. Cir. 1998); *United States v. Denver*, 943 F. Supp. 1304, 1310-11, 6 AD Cas. (BNA) 245, 250 (D. Colo. 1996).

1

Plaintiff to compete with other non-disabled workers and then gave both positions to non-disabled workers.   Defendant failure to transfer Plaintiff forced her to continue working as an inbound call taker, despite her disability and the difficulties it caused.   After a few months, Plaintiff was forced out of her position and onto a disability leave because of her restrictions.   Defendant's failure to accommodate Plaintiff rendered her unemployed and caused her to sustain tens of thousands of dollars in loss income and benefits.

## II.   THE PARTIES

4.   Plaintiff, Sarena Salmeri is an individual residing in Plantsville, Connecticut.

5.   Defendant, Bank of America, National Association ("BOA"), is a National Banking Association with a principal place of business located at 100 North Tryon Street, Suite 170, Charlotte, North Carolina.

6.   Defendant employs more than 500 employees and is an "employer" within the meaning of the ADA.

## III.   JURISDICTION

7.   This Court has jurisdiction over the Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331.

8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

9.   Venue is proper in this district under 28 U.C.S. § 1391 because the acts or omissions giving rise to the claims in this Complaint took place in this district.

10. Plaintiff filed a complaint alleging disability discrimination in violation of the ADA with the Equal Employment Opportunity Commission through the Connecticut Commission on Human Rights and Opportunities on or about October 26, 2017 and received her Notice of Right to sue on November 14, 2018.   A copy of the Plaintiff's Notice of Right to sue is attached as **Exhibit A**.

## IV.    LEGAL PRINCIPLES

11. Under federal law, employers must protect disabled employees from discrimination. The
    ADA defines a disability as "a physical or mental impairment that substantially limits one
    or more major life activities of an individual." 42 U.S.C. §12102(1)(A).

12. Federal law prohibits employers from treating their employees differently because of
    their disabilities and requires them to make "reasonable accommodations" for "qualified
    individuals."  42 U.S.C. § 12112(b)(5)(A).

13. Reasonable accommodations may include reassignment to a vacant position.  42 U.S.C.
    §12111(9)(B).  Such reassignments must be made if the disabled employee is qualified
    for the position.

14. "Does reassignment mean that the employee is permitted to compete for a vacant
    position? No. Reassignment means that the employee gets the vacant position if s/he is
    qualified for it. Otherwise, reassignment would be of little value and would not be
    implemented as Congress intended." *U.S. Equal Opp. Comm'n.*, Notice No. 915.002,
    para. 29 (Oct. 17, 2002)

15. To determine the appropriate reasonable accommodation it may be necessary for the
    covered entity to initiate an informal, interactive process with the individual with a
    disability in need of the accommodation. This process should identify the precise
    limitations resulting from the disability and potential reasonable accommodations that
    could overcome those limitations.  29 CFR §1630.2(o)(3).

16. Employers have a duty to transfer employees in such circumstances and may not give the
    open position to a non-disabled worker, even if they believe the non-disabled worker is

better qualified. It is not enough to let that employee compete against other workers for the position.

## V.   FACTUAL ALLEGATIONS

17. Defendant owns and operates a call center at 70 Batterson Park Road, Farmington, Connecticut 06032 that services Bank of America customers.

18. Defendant hired Plaintiff as an Inbound Specialist I to work at its Farmington, Connecticut call center on or about May 23, 2016.

19. Defendant requires an Inbound Specialist I to take incoming calls from its customers and answer their questions regarding home equity lines of credit.

20. Plaintiff suffers from Central Auditory Processing Disorder (CAPD), a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102.

21. CAPD substantially limits the major life activity of concentrating, communicating, and thinking.

22. Defendant was aware that Plaintiff suffers from CAPD.

23. Jayme Mosier worked for Defendant as a Call Center Team Leader at the Farmington Call Center and was Plaintiff's direct supervisor.

24. Upon hire, Plaintiff was placed into Defendant's training program for newly hired Inbound Specialists until approximately August 2016.

25. Approximately August 2016, Plaintiff went "live" on the phones, meaning that she was now responsible for answering calls directly from Defendant's customers.

26. Defendant required Inbounds to continue their legal compliance training after they went "live."

27. Plaintiff asked Mosier if she could complete her training in a separate room away from the main floor because background noise made it hard for her to focus and distinguish sounds.  During this conversation, Plaintiff told Mosier that she suffers from CAPD.

28. Once Plaintiff went "live," she struggled to keep up with the pace of incoming customer calls.

29. Specifically, Plaintiff struggled to adhere to Defendant's "wrap and idle" metrics.  "Wrap and idle" refers to tasks that Inbounds must perform after completing every call, such as documenting the details of the prior call.  "Wrap and idle" time also refers to other things, such as using the restroom, or getting a drink of water.

30. Defendant requires all Inbounds to spend at least 70% of their working time answering calls from customers and allows them up to 30% of their working time for "wrap and idle" tasks.

31. Plaintiff struggled to process the audibly-received information she obtained from customers and transcribe that information fast enough after completing phone calls to adhere to her expected "wrap and idle" times.

32. Plaintiff failed to meet her "wrap and idle" metrics several different months during her employment.

33. Mosier verbally reprimanded Plaintiff multiple times about her "wrap and idle" performance during Plaintiff's early months as an Inbound Specialist I.

34. Plaintiff requested an accommodation for her CAPD from Mosier around late September/early October 2016 because she struggled to adhere to the "wrap and idle" metrics.

35. Mosier told Plaintiff that Defendant needed documentation of her disability to know what accommodations they could offer.  Mosier also told Plaintiff during this conversation that "we don't know what to do with you."

36. On November 23, 2016, Plaintiff obtained a neuropsychological evaluation report from Dr. Sarah Tartar ("Tartar Report").

37. Plaintiff produced a copy of the Tartar Report to Defendant on or about November 23, 2016.

38. Defendant reviewed the Tartar Report and was on notice of all Dr. Tartar's findings and recommendations as described in the report, including that Plaintiff suffered from CAPD and that her CAPD was unlikely to improve in the future.

39. Approximately one week after Defendant received the Tartar report, Sarah Zimmerman, a human resources representative for Defendant contacted Plaintiff by telephone.

40. During the telephone conversation Zimmerman told Plaintiff she had two options to keep her job at BOA:

   a. Plaintiff could take a thirty-day (30) paid leave to conduct an "assisted job search" with Zimmerman to look for a job within the Bank.  If that did not result in her obtaining a new job, then the Bank would give her an additional thirty (30) days of unpaid leave to look for a job outside of the Bank on her own.  If she did not find a job after those additional thirty days, Defendant would lay her off and give her severance pay; or

   b. Plaintiff could apply for short-term disability benefits.

41. Defendant did not offer or discuss any reasonable accommodations that would allow Plaintiff to keep her job as an Inbound Specialist.

42. In December 2016, Defendant emailed all Inbound Specialists working in Farmington, informing them that two (2) positions were vacant and available in the Outbound department.

43. Defendant interviewed Plaintiff twice, once for each position.

44. Outbound Specialists job responsibilities are to make "closing calls."

45. During "closing calls," Outbound Specialists contact customers to review the terms and conditions of their mortgages and set a time and place for customers to attend closings and sign their mortgage paperwork.

46. Outbound Specialists are required to complete six (6) total closing calls per day.

47. Outbound Specialists are not subject to "wrap and idle" requirements like the Inbound Specialists are.

48. Plaintiff was qualified for the position of Outbound Specialist I.

49. Inbound Specialists receive and handle "closing calls" as part of their job responsibilities of handling incoming phone calls from its customers.

50. In fact, Plaintiff had handled "closing calls" successfully many times and was fully trained and qualified to do so in the Outbound unit.

51. Plaintiff sent an email to Mosier and Donna Gladney, Defendant's VP – Home Equity Divisional Fulfillment Leader, requesting a transfer to one of the vacant Outbound position as an accommodation for her disability.

52. On or about January 9, 2017, Plaintiff approached Mosier and Gladney to discuss the Outbound position, Mosier told Plaintiff to "get that idea out of [her] head," and that she will "never get that position."

53. Defendant denied Plaintiff's request for a transfer.

54. After the conversation with Mosier on or about January 9, 2017, Plaintiff informed Zimmerman that she applied for the vacant Outbound Specialist positions but did not get them. Zimmerman replied that she couldn't do anything about it.

55. Defendant hired two other Inbound Specialists, Candace Pepin and Chondan Pereira, to fill the vacant Outbound Specialist positions.

56. Neither Candace Pepin nor Chondran Pereira have a disability.

57. At no time did Defendant ever discuss Plaintiff's request for a transfer to Outbound with her or engage in any meaningful interactive process regarding her request for a transfer to the Outbound position.

58. After Defendant failed to transfer Plaintiff to an Outbound position, Plaintiff continued working as an Inbound Specialist I.

59. In April 2017, Mosier verbally warned Plaintiff that her "wrap and idle" time were sub-standard during March 2017.

60. On June 9, 2017, Mosier gave Plaintiff a written warning that her "wrap and idle" metrics were sub-standard during May 2017.

61. Mosier told Plaintiff that June 9, 2017 would be her last day of work and Defendant put Plaintiff on a disability leave of absence.

62. Starting June 10, 2017, Plaintiff was unemployed as a result of Defendant's failure to transfer her to one of the two open outbound positions. If she had been transferred to the outbound position as she requested, she would have been able to perform the duties of that position because it was less hectic and her CAPD would not have presented a problem. She would have successfully performed the duties of that position.

63. Defendant's conduct in failing to transfer the Plaintiff to one of the vacant Outbound

Department positions violates their obligation to accommodate Plaintiff under the ADA.

## VI.   COUNT ONE: DISCRIMINATION ON BASIS OF DISABILITY: FAILURE TO ACCOMMODATE – AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101, *et. seq.*

64. As set out more fully above, Defendant discriminated against Plaintiff by failing to

reasonably accommodate her disability by refusing to reassign the Plaintiff to one of the

two vacant Outbound Specialist I positions.

65. Defendant's treatment of the Plaintiff violated the ADA, 42 U.S.C.§. 12101, *et. seq.*

66. As a result of Defendant's violation of the law, Plaintiff has suffered lost wages and other

perquisites of employment, a loss or impairment of her earning capacity and lost career

opportunities.  Additionally, the Plaintiff has and continues to experience emotional

distress as a result of the Defendant's conduct and has had to incur attorneys' fees and

costs in bringing this action.

## VII.   COUNT TWO: DISCRIMINATION ON BASIS OF DISABILITY: DISPARATE TREATMENT – AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101, *et. seq.*

67. As set out more fully above, Defendant discriminated against Plaintiff by refusing to hire

her into one of the two vacant Outbound Specialist I positions and instead hired non-

disabled workers to fill those positions.  Defendant's decision to reject Plaintiff for those

positions was at least in part on account of her disability – CAPD.

68. Defendant's treatment of the Plaintiff violated the ADA, 42 U.S.C.§. 12101, *et. seq.*

69. As a result of Defendant's violation of the law, Plaintiff has suffered lost wages and other

perquisites of employment, a loss or impairment of her earning capacity and lost career

opportunities.  Additionally, the Plaintiff has and continues to experience emotional

distress as a result of the Defendant's conduct and has had to incur attorneys' fees and costs in bringing this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Sarena Salmeri seeks the following relief:

1.     Lost wages, benefits and other perquisites of employment;

2.     Compensatory damages;

3.     Punitive damages;

4.     Attorneys' Fees and costs;

5.     Interest; and

6.     Such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff Sarena Salmeri requests a trial before a jury on all issues so triable.

PLAINTIFF Sarena Salmeri,

By: _____

Thomas J. Durkin
Federal Bar No.: ct30371
Deborah L. McKenna
Federal Bar No.: ct17326
The Hayber Law Firm, LLC
750 Main St., Suite 904
Hartford, CT 06103
Telephone: (860) 522-8888
Fax: (860) 218-9555
tdurkin@hayberlawfirm.com
dmckenna@hayberlawfirm.com
Attorneys for Plaintiff